**MONTROSE FORD, INC., Appellee,**

v.

**STARN; T.E. Clark Ford, Inc., Appellant.***

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20605.

Decided Jan. 9, 2002.

</div>

---

* Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1459, 2002-Ohio-2230, 767 N.E.2d 1177.

Jay E. Krasovec and Carl E. Patrick, for appellee Montrose Ford, Inc.

Mary Jo Paulett–Toumert, for Kevin Starn.

Fred J. Pompeani and Paul J. Astolfi, for T.E. Clarke Ford, Inc., nonparty appellant.

WHITMORE, Judge.

{¶ 1} T.E. Clarke Ford, Inc. ("Clarke") has appealed from a judgment of the Summit County Court of Common Pleas ordering Clarke to produce, under a

protective order, certain documents to Montrose Ford, Inc. ("Montrose"). This court affirms.

I

{¶ 2}  Kevin Starn was employed by Montrose from November 1983 through March 2000. At Montrose, Starn served as a parts director and computer systems administrator. During his employment with Montrose, Starn was entrusted with what Montrose asserted is proprietary and confidential information, including customer lists and information concerning discounting, vendor habits, and accounts.

{¶ 3}  In March 2000, Starn left his employment with Montrose to assume a similar position for Montrose's largest competitor, Clarke. In August 2000, Montrose filed a complaint against Starn alleging misappropriation of trade secrets and confidential and proprietary information. Montrose alleged that immediately upon Starn's employment with Clarke, Starn began soliciting customers of Montrose and began undercutting Montrose's pricing. Montrose alleged that as a result of Starn's misappropriation of trade secrets and confidential and proprietary information, Montrose lost a significant portion of its market share in the wholesale and retail parts business.

{¶ 4}  On October 9, 2000, Montrose issued a subpoena duces tecum to Clarke, requesting Clarke to produce certain customer invoices, purchase and sale invoices, account statements, sales analysis reports, portions of financial statements, customer lists, and documents identifying discounts given by vendors to Clarke and by Clarke to its customers. Montrose wanted this information to ascertain the extent of any transfer of customers and profits from Montrose to Clarke, to support its allegations that Starn misappropriated trade secrets and confidential commercial information, and as a measure of any damages it might be entitled to in its action against Starn.

{¶ 5}  In response to the subpoena, Clarke filed several objections on the grounds that the subpoena sought irrelevant information, was unduly burdensome, and sought trade secrets and confidential commercial information. Montrose filed a motion to compel production. Clarke opposed the motion to compel, and filed a motion for protective order. Montrose subsequently modified its request for documents from Clarke, and indicated its willingness to enter into a protective order limiting review of the documents to its counsel and experts. Clarke filed a second motion for protective order in response to Montrose's modified request for documents. In this motion, Clarke argued that it should not be required to produce certain documents relating to Clarke's sales, accounting, and customers, because such production would require the release of trade secrets and confidential commercial information to its competitor Montrose.

{¶ 6}   The trial court further narrowed the scope of the information sought by Montrose to include only wholesale and retail daily part sales invoices, exclusive of in-house and body shop invoices, monthly inventories for certain periods from 1999 and 2000, and certain wholesale and retail customer lists.   The trial court ordered Clarke to supply this information to Montrose for the sole purpose of comparing Clarke's sales and customer lists before and after Starn's employment, and issued a protective order requiring that the records be kept confidential to Montrose's counsel.

{¶ 7}   Clarke has timely appealed from the order compelling it to produce information to Montrose, asserting one assignment of error.

II

Assignment of Error

{¶ 8}   "The trial court erred in failing to issue a protective order adequate to ensure that trade secrets and confidential commercial information of appellant T.E. Clarke Ford would not be disclosed to its competitor, Montrose Ford."

{¶ 9}   In its sole assignment of error, Clarke has argued that the trial court erred in failing to issue a protective order that safeguards its trade secrets and confidential commercial information from its competitor Montrose.   Specifically, Clarke has maintained that because one of the attorneys who will see the information Clarke has been ordered to disclose serves as general counsel to Montrose, the disclosure ordered by the trial court is tantamount to turning over Clarke's trade secrets to Montrose.

{¶ 10}   Trial courts have broad authority to devise protective orders to preserve the secrecy of trade secrets.   R.C. 1333.65; *Alpha Benefits Agency v. King Ins. Agency* (1999), 134 Ohio App.3d 673, 683, 731 N.E.2d 1209.   In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing the discovery to proceed against any harm which may result.   *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 576, 639 N.E.2d 484.   "The decision to grant a motion for a protective order is left to the discretion of the trial court.   Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." *Alpha Benefits*, at 680, 731 N.E.2d 1209, citing *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198.

{¶ 11}   The trial court stated that the purpose of its order compelling Clarke to produce documents to Montrose was so that Montrose could "ascertain

whether or not there was any transfer of clientele from [Montrose] to [Clarke]."[1] The trial court accordingly narrowed the scope of the documents it required Clarke to produce in order to permit Montrose to "examine that issue in a very limited manner." The trial court simultaneously issued a protective order with respect to the information to be disclosed that restricted the availability of the records produced to counsel for Montrose, for the sole purpose of comparing customer and sales lists of Clarke before and after Starn's employment.

{¶ 12} Montrose does not contest that the information it seeks from Clarke includes trade secrets. At issue in this appeal is whether the trial court committed reversible error in fashioning its protective order and ordering disclosure of the information.

{¶ 13} Given the dearth of controlling authority on the propriety of in-house counsel's review of discovery materials containing trade secrets of a competitor, this court turns to the insightful analysis found in *U.S. Steel Corp. v. United States* (C.A.Fed. 1984), 730 F.2d 1465. In *U.S. Steel*, the United States Court of Appeals for the Federal Circuit reviewed a decision of the Court of International Trade ("CIT") that denied U.S. Steel's corporate in-house counsel access to certain confidential information, while granting access to counsel retained by other parties. In that case, the CIT's only basis for distinguishing between in-house and retained counsel was its general assumption that there existed "a greater likelihood of inadvertent disclosure by lawyers who are employees committed to remain in the environment of a single company." Id. at 1467–1468. The CIT inferred from the mere fact that certain counsel was in-house that "a clear and more sustained relationship can be presumed as an outgrowth of the employer-employee relationship." Id. at 1468.

{¶ 14} The United States Court of Appeals for the Federal Circuit, however, rejected as overly broad the CIT's blanket characterization of in-house counsel. Id. at 1469. The court of appeals noted that both retained and in-house lawyers are officers of the court bound by the same Code of Professional Responsibility, and "that some retained counsel enjoy long and intimate relationships and activities with one or more clients." Id. at 1468. The court of appeals further observed that in-house and retained counsel provide the same types of services and are subject to the same pressures, and that the pitfalls associated with inadvertent disclosure are identical for both. Id.

{¶ 15} The court of appeals determined that, rather than assigning controlling weight to the classification of counsel as in-house or retained, the presence of

---

1. The trial court's journal entry inadvertently refers to Clarke as a defendant in the underlying action; however, Clarke's involvement in this case is limited to its possession as a third party of certain documents subpoenaed by plaintiff Montrose.

an unacceptable risk of inadvertent disclosure must be assessed on a counsel-by-counsel basis. Id. The court of appeals suggested, as a basis for allowing or denying counsel access to a competitor's confidential commercial information, a fact-intensive evaluation of counsel's involvement in "competitive decisionmaking." Id. at fn. 3. The court described this phrase as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Id.

{¶ 16} The court concluded that the CIT's concern for preserving the integrity of the confidential information at issue "would be eminently applicable to * * * the crafting of a suitable protective order." Id. at 1467. The court also acknowledged that, depending on the level of counsel's involvement in competitive decisionmaking, protection of confidential information may in some cases require forcing a party either to retain outside counsel or be denied access to sensitive information altogether. Id. at 1468. However, the involvement of counsel in competitive decisionmaking, and the attendant level of protection necessary to protect confidential information, are fact-intensive inquiries that must be conducted independent of counsel's status as in-house or retained. Id. at 1469.

{¶ 17} This court finds the reasoning of *U.S. Steel* compelling and applicable to the facts of the instant case. Here, Clarke argued its objections concerning the access to its trade secrets by general counsel for Montrose to the trial court. in its motion for protective order. In response, the trial court narrowed the scope of the documents that Clarke was required to produce to Montrose. The trial court also issued a protective order limiting access to Clarke's records to Montrose's counsel, for the sole purpose of comparing customer and sales lists of Clarke before and after Starn's employment. In addition, the protective order provided that "counsel are not to reveal any of the above information to any experts for trial, clients but [sic] other than their own review and preparation for further proceedings."

{¶ 18} Clarke has asserted that access to its trade secrets by Montrose's general counsel, even under the protective order issued by the trial court, would jeopardize Clarke's trade secrets. This court declines to hold, however, that the status of Montrose's counsel as in-house conclusively creates an unacceptable risk that Clarke's trade secrets, produced under a protective order, will be revealed to Montrose. Clarke's assertion, moreover, is not supported by any evidence that Montrose's general counsel is involved in competitive decisionmaking at Montrose. In the absence of any such evidence in the record, this court cannot find that the trial court abused its discretion in granting Montrose's general counsel

access to Clarke's trade secrets under the protective order. Clarke's argument must therefore fail.

{¶ 19} Starn, the defendant employee, has described himself as "an observer to this dispute between Montrose and Clark." Nevertheless, Starn has taken the position that the documents requested by Montrose are neither relevant nor necessary for Montrose to prove misappropriation or damages.[2]

{¶ 20} Starn has first asserted that the documents sought by Montrose are not relevant to Montrose's action against Starn for misappropriation of trade secrets. According to Starn, Montrose must establish that it treated as confidential commercial information the trade secrets allegedly misappropriated by Starn, before Clarke can be compelled to produce its trade secrets to Montrose. However, while it is true that Montrose must establish that the information at issue in fact constituted trade secrets, Montrose must also demonstrate that Starn *misappropriated* these trade secrets. See R.C. 1333.61(B)(2). The trial court explicitly found that by examining the documentation Clarke was ordered to disclose, Montrose would be aided in determining whether Starn disclosed or used any of Montrose's trade secrets during his employment with Clarke. Starn has not articulated any basis for limiting the scope of Montrose's discovery to material relevant to establishing only the first element of Montrose's claim. Moreover, such restrictions contravene the broad scope of discovery contemplated by Civ.R. 26(B)(1). Starn's first argument must therefore fail.

{¶ 21} Next, Starn has argued that Montrose should be denied access to the documents it seeks from Clarke because Montrose has not shown a "substantial need" for the documents as required by Civ.R. 45(C)(5). Civ.R. 45(C)(5) provides:

{¶ 22} "If a motion [to quash or modify a subpoena because it subjects a person to undue burden] is made under division * * * (C)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship * * *."

{¶ 23} However, Clarke did not move to modify or quash the subpoena pursuant to Civ.R. 45(C); it moved for a protective order pursuant to Civ.R. 26(C). Montrose was therefore never required to show a "substantial need" for the material it sought under Civ.R. 45(C). Accordingly, Starn's second argument also lacks merit.

---

2. Starn has no cognizable interest in the dispute between Clarke and Montrose concerning production of Clarke's confidential information. To the extent that Starn has standing to contest the relevance of the discovery obtained by Montrose to its claims against him, however, this court will address Starn's arguments.

{¶ 24} Finally, Starn has contended that the documents requested by Montrose are not necessary to prove damages resulting from Starn's alleged misappropriation. This court has already determined, however, that the trial court did not abuse its discretion in finding that the information sought by Montrose was relevant to establishing the element of misappropriation. Therefore, this court need not address Starn's final argument.

### III

{¶ 25} Clarke's sole assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

SLABY, P.J., and CARR, J., concur.