[Cite as *Weygandt v. Ward*, 2013-Ohio-1937.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE )

EARLY WEYGANDT, et al.    C.A. No.    12CA0004

    Appellees

    v.    APPEAL FROM JUDGMENT
ENTERED IN THE
VIRGIL F. WARD, et al.    COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
    Defendants    CASE No.    09-CV-0088

    and

ROGER E. BAKER, et al.

    Appellants

DECISION AND JOURNAL ENTRY

Dated: May 13, 2013

CARR, Judge.

**{¶1}** Appellants, Roger Baker, Diane Baker, and Linda Flickinger, appeal the judgment of the Wayne County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

**{¶2}** Fred Ward died in 1988, leaving his wife a life estate in his property. His will provided that, upon his wife's death, his real property would pass to his son Virgil, who also received a life estate. The will provided that Virgil could "sell and dispose of any or all of said real property for such prices and upon such terms as he in his own discretion may deem advisable * * *." If Virgil sold any of the land, however, he had to divide the proceeds into six

parts. Virgil was allowed to keep two of the parts but he had to give the others to his four sisters or their descendants.

{¶3} One of the properties that Virgil received after Mr. Ward's wife died was a 240-acre farm that he and his father had farmed together. Virgil continued farming the land for several years until it became too difficult for him. He began renting the land to his niece and her husband, Diane and Roger Baker, who lived nearby.

{¶4} Desiring to keep the 240-acres together as a family farm, Virgil later decided that he wanted the Bakers to have the land. After consulting with a lawyer, he learned that he could not give the land to the Bakers, but could sell it to them. According to the Bakers, Virgil proposed that he sell the land to them for $1000 an acre, contingent on it remaining a farm and their letting him live on the land until his death. The Bakers agreed to those terms. They executed a sales agreement and mortgage, under which the Bakers would pay $240,000 for the property and Virgil would receive the first $50,000 in mortgage payments to reimburse him for improvements he had made to the farm with the rest to be divided between him and his sisters as provided in Fred Ward's will.

{¶5} After learning about the sale, some of Virgil's sisters and their descendants sued Virgil, the Bakers, and anyone else who might have an interest in the land, seeking a declaration that the sale was void. The trial court dismissed the action because it determined that Fred Ward's will gave Virgil power to sell the land under whatever terms he desired. This Court reversed, however, because we determined that, under the Ohio Supreme Court's holding in *Johnson v. Johnson*, 51 Ohio St. 446 (1894), Virgil owed a fiduciary duty to his sisters and their descendants "as their implied, quasi trustee." *Weygandt v. Ward*, 9th Dist. No. 09CA0050,

2010-Ohio-2015, ¶ 12. We remanded the case to the trial court for it to determine whether Virgil acted within his authority when he conveyed the property to the Bakers. *Id*. at ¶ 13, 15.

{¶6} At trial, Virgil's sisters presented evidence that, at the time Virgil sold the property for $240,000, its fair market value was $1,170,000. They argued that, even though Virgil had discretion to sell the land at "such prices and upon such terms as he * * * may deem advisable," he had breached his duty of good faith to them. The trial court agreed, concluding that Virgil "did not have the authority to convey the real property for insufficient consideration, reserve a life estate for himself, grant an agricultural easement on the property, and take a note and mortgage on the property whereby he received the first $50,000 in payments before any monies were to be paid to Plaintiffs and others." It, therefore, declared all of the documents that were involved in the conveyance null and void. The Bakers have appealed, assigning seven errors.

II.

## ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED BY CONCLUDING THAT VIRGIL WARD DID NOT HAVE THE AUTHORITY UNDER HIS POWER OF SALE TO SELL THE WARD FARM FOR SUCH PRICE AND UPON SUCH TERMS AS HE IN HIS OWN DISCRETION DEEMED ADVISIBLE.

{¶7} The Bakers argue that, under Fred Ward's will, "the only limitation" on Virgil's power to sell the 240 acres "was that the price and terms of sale must be ones which 'he in his own discretion may deem advisable.'" They have argued that, since Virgil was the one who set the terms of the transaction, including the price, the sale was "upon such terms as [Virgil] in his own discretion may deem advisable," under the will. According to the Bakers, "[t]he trial court had no right to question Virgil's discretion as to the price or the terms; its only inquiry should have been to determine whether the price and terms were, in fact, the product of [his] discretion."

**{¶8}** "The law of the case doctrine 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. No. 23648, 2008–Ohio–37, ¶ 10, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Ultimately, "the doctrine of law of the case precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal. New arguments are subject to issue preclusion, and are barred." *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404–405 (1996).

**{¶9}** In this Court's prior decision, we reasoned that, because Virgil's sisters were entitled to part of the proceeds of the sale of any land that he had received, Virgil "owed them a duty as their implied, quasi trustee." *Weygandt v. Ward*, 9th Dist. No. 09CA0050, 2010-Ohio-2015, ¶ 12. Because Virgil was an implied trustee, we concluded, as a matter of law, that he did not have "absolute power" over the terms of the sale as the language of the will might suggest. *Id.* at ¶ 13. The Bakers' present argument ignores the fact that whatever discretion the will may have given Virgil to sell the property, it was limited by the duties he owed as an implied trustee. In arguing that the only limitation on Virgil's authority was that the price and terms must be "which he in his own discretion may deem advisable," the Bakers are, essentially, asking this Court to reconsider whether Virgil's authority under the will was limited by his duty as trustee. This Court, however, has already determined that Fred Ward's will did not give Virgil unbridled power to sell the 240 acres at whatever price and under whatever terms he desired. Rather, Virgil's authority was limited by the duties he owed to the other beneficiaries as an implied trustee. Although the previous appeal was from a motion to dismiss, it was necessary in deciding that appeal for this Court to determine whether Virgil owed a duty to the other beneficiaries of

the will. Under the doctrine of law of the case, the Bakers may not re-litigate whether a duty existed or the limitation that it placed on Virgil's discretion to sell the 240 acres. The Bakers' assertion that "[t]he trial court had no right to question Virgil's discretion as to the price and terms" is incorrect. Pursuant to our remand instructions, it was the court's responsibility to consider whether Virgil acted within his authority as trustee when he sold the property. The Bakers' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ANALYZING THE SUFFICIENCY OF THE CONSIDERATION APPELLANTS PAID FOR THE WARD FARM TO DETERMINE WHETHER THE TRANSACTION WAS A SALE OR A GIFT.

{¶10} The Bakers acknowledge that, although Fred Ward's will gave Virgil the power to sell the 240 acres, it did not give him the right to gift them. They contend, however, that, because the conveyance was for money, it was a sale, not a gift. They also contend that there is nothing in Fred Ward's will that set parameters on the amount of consideration that Virgil had to receive in a sale. Accordingly, they argue that the trial court should not have examined the sufficiency of the consideration he received.

{¶11} This Court based its prior decision on the Ohio Supreme Court's holding in *Johnson v. Johnson*, 51 Ohio St. 446 (1894). We explained that *Johnson* "held that a person who receives a life estate in real property with a power to sell is 'by implication, a quasi trustee for those in remainder.'" *Weygandt*, 2010-Ohio-2015 at ¶ 12, quoting *Johnson*, 51 Ohio St. 446, at paragraph two of the syllabus. The Ohio Supreme Court took its quasi-trustee theory from a treatise by Jairus Wade Perry. *Johnson*, 51 Ohio St. at 460. According to Perry, "[t]rustees * * * in the execution of their powers must use the utmost good faith toward all parties in interest. This proposition cannot be too strongly stated and enforced. They must act impartially for every

person who has any rights in the estate * * *. They must use every effort to sell the estate under every possible advantage of time, place, and publicity. They must exercise their discretion, so far as they have any, in an intelligent and reasonable manner." Jairus Ware Perry, *A Treatise on the Law of Trusts and Trustees*, Section 602o, p. 999 (6th ed. 1911). Perry also explained that a "sale will not be set aside for mere inadequacy of price, if due diligence was used by the donee of the power to sell under every possible advantage. But there may be cases where the price is so grossly inadequate that the mere statement of it demonstrates that there must have been some mismanagement or collusion, as if land worth $500 should be sold for $50." *Id*. at Section 602z, p. 1011.

{¶12} In our prior decision, we recognized that Virgil would be in breach of his fiduciary duty to his sisters if his sale of the farm was "made with inadequate consideration to constitute a good faith sale under the provisions of the will." *Weygandt*, 2010-Ohio-2015 at ¶ 15. While the Bakers argue that our statement was dicta, it accurately surmised what the Ohio Supreme Court explained in *Johnson* and what Perry explained in his treatise. *See Johnson*, 51 Ohio St. at 460-461 ("[T]he duty rested upon [the life-estate tenant], in the nature of a trust, to have due regard for the rights of those in remainder, as to the part of the estate not consumed by her for her support; that while she could use and enjoy the estate to its fullest extent for her support, and consume the whole of it, if necessary, she could not go beyond what would be regarded as good faith towards the remainder-men * * *. [The decedent] gave her the right to consume, but [not] to recklessly squander or give away, the estate."). We conclude that, because Virgil owed a fiduciary duty to his sisters, it was appropriate for the trial court, as part of its determination of whether Virgil breached his duty, to analyze whether he received adequate

consideration when he sold the 240-acre farm. The Bakers' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY FAILING TO INTERPRET THE WILL OF FRED WARD IN ACCORDANCE WITH THE TESTATOR'S INTENT.

{¶13} The Bakers argue that it was incorrect for the trial court to examine whether the sale was for sufficient consideration because the examination rendered the will's "in his own discretion" language meaningless. They have also argued that the there was no evidence that Fred Ward intended to limit Virgil's discretion. According to the Bakers, Virgil was "[t]he sole arbiter of sufficiency." They have further argued that the evidence they presented suggested that Fred Ward did not intend to limit Virgil's authority to sell the farm.

{¶14} As we explained in our prior decision, the will's broad language regarding Virgil's discretion to sell the farm was limited by the fact that it also made Virgil a quasi-trustee to anyone who had a remainder in Fred Ward's real property. *Weygandt*, 2010-Ohio-2015, ¶ 12-13. The doctrine of law of the case prevents this Court from reconsidering that issue in this appeal. *Nolan v. Nolan*, 11 Ohio St.3d 1, 4 (1984). In accordance with our prior decision, we conclude that whether Virgil received sufficient consideration for the sale of the land was an appropriate factor for the trial court to consider when it evaluated whether he "acted within his authority under the will" or breached his fiduciary duty to his sisters. *Weygandt* at ¶ 13. The Bakers' third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY CONCLUDING THAT VIRGIL WARD'S BREACH OF HIS FIDUCIARY DUTY TO PLAINTIFFS INVALIDATED HIS SALE OF THE WARD FARM TO APPELLANTS INSTEAD OF MERELY SUPPORTING A CLAIM FOR DAMAGES.

{¶15} The Bakers have argued that Virgil did not breach his fiduciary duty to his sisters and their descendants. They have also argued that, even if Virgil violated his duty, the appropriate remedy was to hold Virgil liable for the difference in value. According to the Bakers, the court did not have the power to divest them of the 240 acres when they did nothing wrong.

{¶16} With respect to whether Virgil breached his fiduciary duty, the Ohio Supreme Court has recognized that, "[s]o long as a trustee executes [a] trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor." *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 279 (1989). "Whether a defendant properly discharged his duty of care is normally a question for the [trier of fact]." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989); *see Rudy v. Bodenmiller*, 2d Dist. No. 89 CA 54, 1990 WL 205109, *11 (Dec. 11, 1990) (characterizing whether defendant breached his fiduciary duties as a question of fact).

{¶17} Virgil's sisters presented evidence that the fair market value of the 240 acres at the time of the sale was $1,170,000. The trial court accepted that value as credible. Virgil's sisters also presented evidence that, although the sale price was $240,000, Virgil intended to keep the first $50,000 of the Bakers' mortgage payments for himself in order to reimburse himself for improvements that he allegedly made to the land. Accordingly, only $190,000 would eventually pass under Fred Ward's will. That amount is only 16% of the fair market value of the land, even before discounting the payments on the Baker's 15-year mortgage to their present value. We note that, although the sale was contingent on the Bakers' agreeing to an agricultural easement on the property and allowing Virgil to continue living at a house on the acreage, the Bakers did not present any evidence regarding the effect of those conditions on the marketability

of the land. Upon review of the record, we conclude that the trial court's determination that Virgil breached his fiduciary duty to his sisters when he sold the 240 acres at a price that was far below its fair market value was supported by sufficient evidence. We also conclude that the trial court's decision was not against the manifest weight of the evidence.

{¶18} Regarding the remedy that the trial court ordered, the Bakers note that, under R.C. 5810.12(A), "[a] person other than a beneficiary who in good faith assists a trustee, or who in good faith and for value deals with a trustee, without knowledge that the trustee is exceeding or improperly exercising the trustee's powers is protected from liability as if the trustee properly exercised the power." The section "essentially provides protection to a bona fide purchaser for value in connection with trust related transactions." *Peoples Bank Natl. Assn. v. Tome*, 4th Dist. No. 10CA38, 2011-Ohio-5412, ¶ 25 fn. 4. The Bakers have argued that, in light of R.C. 5810.12, the trial court could not set aside the sale unless it found that they either failed to act in good faith or knew that Virgil lacked the power to sell the farm the way that he did. According to the Bakers, the court did not make either of those finding so its decision to set aside the sale was error.

{¶19} The Revised Code provides that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." R.C. 5810.01(A). "To remedy a breach of trust * * * the court may * * * [s]ubject to section 5810.12 of the Revised Code, void an act of the trustee * * *." R.C. 5810.01(B)(9). As noted previously, if a beneficiary acted in good faith "without knowledge that the trustee is exceeding or improperly exercising his powers," the beneficiary is "protected from liability as if the trustee properly exercised the power." R.C. 5810.12(A).

{¶20} The Bakers correctly note that the trial court did not make specific findings with respect to whether they acted in good faith or whether they knew the limits of Virgil's power as

trustee. Whether it was error for the court to void the transaction under R.C. 5810.01(B)(9) depends, in part, on whether it was the Bakers' burden to demonstrate that R.C. 5810.12(A) applies because they acted in good faith or whether it was Virgil's sisters' burden to demonstrate that Section 5810.12(A) does not apply. The trial court did not analyze that issue in its decision.

{¶21} Upon review of the trial court's decision, we conclude that it is incomplete. After determining that Virgil had breached his fiduciary duties, the court immediately went on to declare all of the documents involved in the conveyance null and void without analyzing whether R.C. 5810.12(A) applies. Consequently, the appropriate course of action is to remand this matter to the trial court so that it can resolve that issue, including the burden of proof issue, in the first instance. *FirstMerit Bank, N.A. v. Inks*, 9th Dist. Nos. 25980, 26182, 2012-Ohio-5155, ¶ 20. The Baker's fourth assignment of error is overruled in part and sustained in part.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY ADMITTING PAROL EVIDENCE ABOUT THE FARM SALE AND NOT LIMITING EVIDENCE TO THE INSTRUMENTS OF SALE.

{¶22} According to the Bakers, because the question before the trial court was whether the conveyance of the 240 acres was a sale or a gift, the only evidence that the court should have admitted was the documents executed by the parties. They argue that it was improper for the trial court to allow Virgil's sisters to present evidence about the fair market value of the farm, which had no bearing on whether the transaction was a sale or gift.

{¶23} In this Court's prior decision, we determined that it was improper for the trial court to dismiss the action because the documents presented by Virgil's sisters "raise numerous questions about whether the sale was in fact a sale or was instead a gift *or a transaction for insufficient consideration*." *Weygandt v. Ward*, 9th Dist. No. 09CA0050, 2010-Ohio-2015, ¶ 15

(emphasis added). The evidence that Virgil's sisters presented regarding the fair market value of the property was relevant and material concerning whether the transaction was for insufficient consideration. We, therefore, conclude that the trial court correctly admitted the evidence. The Bakers' fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY ADMITTING EXPERT TESTIMONY AS TO THE FAIR MARKET VALUE OF A FEE SIMPLE INTEREST IN THE WARD FARM.

{¶24} The Bakers argue that the trial court should have excluded an appraiser's testimony about the fair market value of the farm because he did not consider all of the relevant circumstances. According to them, the appraiser only considered the value of a fee simple interest in the acreage and did not determine "a truly comparable value for the Ward Farm" in light of the restrictions Virgil imposed on the sale. The Bakers argue that, because Virgil never intended to sell the farm on the open market, the appraiser's testimony was irrelevant or, at the very least, more prejudicial than probative.

{¶25} Under Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the Bakers argue that the trial court should have only considered the value of the farm with the restrictions Virgil imposed on them, one of the issues that the court had to determine was whether Virgil's insistence on those restrictions was, in itself, a breach of his duty to his sisters. The sisters' evidence about the fair market value of the farm helped the court evaluate whether the restrictions unreasonably diminished the value of the farm. The appraiser's testimony also helped the court evaluate whether the overall terms of the sale constituted a breach of Virgil's fiduciary duty. The trial

court, therefore, correctly allowed the testimony. The Bakers' sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING A PROTECTIVE ORDER WHICH PRECLUDED DEFENDANTS FROM TAKING DEPOSITIONS OF TWO OUT-OF-STATE PLAINTIFFS.

{¶26} Before trial, the Bakers attempted to take the deposition of Virgil's sister Florence Cardillo and his nephew Terry Weygandt, who are plaintiffs in the action, in Ohio. Ms. Cardillo, who lives in California, and Mr. Weygandt, who lives in Oregon, moved for a protective order after the Bakers moved to compel them to appear for deposition in Ohio. In her affidavit, Ms. Cardillo averred that she is 89 years old and in poor health. She averred that she does not have any knowledge about the documents that conveyed the farm to the Bakers or know of any documents that could assist anyone in determining the value of the farm. She further averred that it would be a great hardship on her health and expenses to have to travel to Ohio for a deposition. Mr. Weygandt averred that he did not have any knowledge concerning the transfer of the farm, the value of the farm, or that he knew anyone except the other plaintiffs who might have such information. He also averred that it would be a financial hardship to have to travel to Ohio to testify at a deposition and that he did not plan on testifying at trial.

{¶27} The Bakers opposed the motion for protective order, noting that it was Ms. Cardillo and Mr. Weygandt who had chosen to sue them in Ohio. The Bakers also argued that Ms. Cardillo and Mr. Weygandt had mischaracterized the issues in the case, that Ms. Cardillo and Mr. Weygandt should not be the arbiters of whether they have any discoverable knowledge, and that the court should not protect them from being deposed just because they claim not to have any knowledge. The Bakers further argued that neither Ms. Cardillo nor Mr. Weygandt had

denied talking with Virgil about the sale of the farm. The trial court, however, granted the motion.

{¶28} In their brief, the Bakers repeat their arguments that Ms. Cardillo and Mr. Weygandt have mischaracterized the issues in the case and that their affidavits do not deny knowledge about all the relevant issues. According to the Bakers, Ms. Cardillo may have had a conversation with Fred Ward in which Fred Ward told her that he intended for Virgil to be able to do whatever he wished with the farm and be able to sell it for any price whatsoever, regardless of its value. They argue that, because they were not allowed to depose Ms. Cardillo or Mr. Weygandt, they can only speculate as to what information they might have discovered.

{¶29} Civ.R. 26(C) provides that, "[u]pon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] * * * that the discovery not be had[.]" "Whether a protective order is necessary [is] a determination within the sound discretion of the trial court." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 23. "Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." *Montrose Ford, Inc. v. Starn*, 147 Ohio App.3d 256, 259 (9th Dist.2002), quoting *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.*, 134 Ohio App.3d 673, 680 (8th Dist.1999).

{¶30} It is clear from the language of Fred Ward's will that Virgil had as much discretion as possible with respect to selling the 240 acres so long as the terms of the sale were consistent with his duty to his sisters and their descendants. The question for the trial court was whether Virgil compromised his duty to his sisters when he set the terms of the sale. It is not

apparent that Ms. Cardillo or Mr. Weygandt would have had any discoverable information regarding whether Virgil fulfilled his duty to his sisters when he sold the farm to the Bakers. Moreover, although Ms. Cardillo and Mr. Weygandt requested a protection "from being noticed for a deposition," that did not prevent the Bakers from attempting to obtain the information they sought through a discovery method that would not be as much of a burden to Ms. Cardillo and Mr. Weygandt such as a deposition upon written questions or written interrogatories. *See* Civ.R. 26(A) (describing methods through which parties may obtain discovery).

{¶31} Upon review of the record, we conclude that the trial court did not abuse its discretion when it issued an order protecting Ms. Cardillo and Mr. Weygandt from having to travel to Ohio for an oral deposition. The Bakers' seventh assignment of error is overruled.

III.

{¶32} The trial court should have analyzed whether R.C. 5810.12(A) applies before declaring the sale of the farm null and void. The judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for that court to resolve that issue in the first instance.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to Appellants and Appellees.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

STEVEN J. SHROCK, Attorney at Law, for Appellants.

CHARLES A. KENNEDY, Attorney at Law, for Appellees.