[Cite as *In re Marjorie A. Fearn Trust*, 2012-Ohio-1029.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| THE MARJORIE A. FEARN TRUST | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| | Case No. 11-CA-16 |
| | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Probate Division, Case No. 2010-8001A |
| JUDGMENT: | Reversed & Remanded |
| DATE OF JUDGMENT: | March 13, 2012 |

APPEARANCES:

For Appellant

KELLY M. MORGAN
380 South Fifth Street
Suite 3
Columbus, OH 43215

For Estate of Stephen E. Algire

ROBERT L. RAUZI
305 East High Street
Mount Vernon, OH 43050

MS. BUTCHER
First-Knox National Bank
1 South Main Street
P.O. Box 1270
Mount Vernon, OH 43050

JORDAN R. INMAN
1378 Hamlet Street
Columbus, OH 43201

For Richard Wells & Stephen Algire

KIM M. ROSE
CLINTON G. BAILEY
P.O. Box 469
Mount Vernon, OH 43050

For Brenda, Andrew, Ashley, & Blake Algire

KENNETH E. LANE
5 North Gay Street
Mount Vernon, OH 43050

CURTIS P. WEAVER
218 Bret Harte Drive
Newport News, VA 23602

BRADLEY D. WEAVER
15249 Tracy Beth Drive
Huntersville, NC 28078

*Farmer, J.*

{¶1} Marjorie Ann Fearn was the mother of three children, Stephen Algire, Brenda Algire, and appellant, Kathy Salyers. On June 2, 2006, Ms. Fearn executed a Restatement of the Marjorie Ann Fearn Revocable Trust Agreement, wherein Ms. Fearn directed her trust assets to be divided into three equal shares and distributed after her death to her three children. Named as co-trustees were appellees, Richard Wells and Stephen Algire. The trust directed that appellant's share was to remain in trust and be distributed to her at the discretion of appellees.

{¶2} Ms. Fearn died on February 19, 2010.

{¶3} On June 15, 2010, appellant filed a complaint for declaratory relief regarding the rights and responsibilities of the parties involving the trust, and seeking several issues including a trust accounting and inventory.

{¶4} On October 18, 2010, the trial court conducted a status conference. Following this conference, the trial court filed an entry on October 26, 2010 ordering appellees to provide appellant with an accounting within thirty days.

{¶5} On January 11, 2011, appellees filed a motion for summary judgment. Attached to the motion was a "Record Book" which was the accounting ordered by the trial court on October 26, 2010. Appellees filed a second accounting on June 23, 2011.

{¶6} During the pendency of the case, appellee Wells resigned as co-trustee. Appellee Stephen Algire passed away on July 28, 2011. Due to the resignation of appellee Wells and the passing of appellee Algire, many of the issues raised by appellant in her declaratory judgment complaint were moot. By journal entry filed August 2, 2011, the trial court granted summary judgment to appellees, finding the

accounting was adequate, and ordered appellant to pay 75% of the attorney fees incurred by appellees.

{¶7}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶8}   "THE JUDGMENT OF THE COURT THAT THE DOCUMENTS FILED BY THE CO-TRUSTEES ON JANUARY 11, 2011, AND JUNE 23, 2011, REPRESENT AN ADEQUATE ACCOUNTING IS CONTRARY TO THE APPLICABLE LAW GOVERNING SUMMARY JUDGMENT."

II

{¶9}   "THE COURT ERRED IN ORDERING APPELLANT KATHY J. SALYERS TO PAY ATTORNEY FEES FOR THE APPELLEES PURSUANT TO THE MOTION FOR SUMMARY JUDGMENT FILED BY THE CO-TRUSTEES."

I

{¶10} Appellant claims the trial court erred in granting summary judgment to appellees as the two accountings submitted by appellees were inadequate.  We agree.

{¶11} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶12} "Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State*

*ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶13} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶14} In its journal entry filed August 2, 2011, the trial court found the following in pertinent part:

{¶15} "8. The accounting filed in this matter, as supplemented at this Court's request, does not meet the professional standard this Court is used to seeing, but it is adequate. The Court is satisfied that all of the significant Trust assets have been gathered and accounted for, the Co-Trustees did not engage in any self-enrichment, the fiduciary fees paid to themselves were not excessive, the trust expenses have been paid, and distributions have been made in a manner that is consistent with Mrs. Fearn's wishes as expressed in her Trust.

{¶16} "9. The litigation initiated by Ms. Salyers ultimately revealed the Co-Trustees were using a less than perfect accounting system. It also revealed that as a matter of common courtesy the Co-Trustees could have done a better job of communicating with Ms. Salyers. However, this poor communication did not violate any legal standard. Primarily, the instant litigation reveals a profound and long standing state of animosity between Ms. Salyers and her brother, Mr. Algire. The degree of this animosity is so great the Court does not believe Mr. Algire could have continued to be an effective trustee, which the trust laws of this State require. However, because of Mr. Algire's death this has become a moot issue.

{¶17} "Accordingly, the Court concludes, as matter of Summary Judgment, that Marjorie Ann Fearn did in 2006 created and execute a valid Trust which provides the basis for the distribution of her assets at the time of her death. At the time this 2006 trust was executed she was not under any undue influence and had the necessary mental capacity to execute this legal document. The Court further concludes, as a matter of Summary Judgment, that the performance of the Co-Trustee, while not perfect, still exceeded the minimum standard for fiduciaries. There is no credible evidence that any significant trust asset was lost or stolen. There is no credible evidence the Co-Trustees paid themselves excessive fees. There is evidence the Co-Trustees attempted to administer the Trust in accordance with the wishes and directives of Mrs. Fearn."

{¶18} In support of appellees' position is the affidavit of appellee Algire, attached to the motion for summary judgment as Defendant's Exhibit 1. In this affidavit, appellee Algire listed the manner of the trust distribution and the reserve for appellant which was to be paid out at $30,000.00 per year until she would qualify for social security.

{¶19} R.C. 5808.13 explicitly defines the duties of a trustee to the beneficiaries. Included in the duties is the requirement that an accounting be given annually:

{¶20} "(C) A trustee of a trust that has a fiscal year ending on or after January 1, 2007, shall send to the current beneficiaries, and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values. Upon a vacancy in a trusteeship, unless a cotrustee remains in office, a report for the period during which the former trustee served must be sent to the current

beneficiaries by the former trustee. A personal representative or guardian may send the current beneficiaries a report on behalf of a deceased or incapacitated trustee."

{¶21} Implicit within the duties and powers of a trustee is the prohibition against self-dealing [R.C. 5808.14(B)(2)]. Also, a trustee "shall exercise a discretionary power reasonably, in good faith, and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." R.C. 5808.14(A).

{¶22} It is undisputed that no accounting and/or inventory by appellees were made known to appellant. It was not until the trial court required an accounting via an entry filed October 26, 2010 pursuant to a status conference that an accounting was given:

{¶23} "Pursuant to said status conference, the Court makes the following Orders.

{¶24} "1. Defendants, Richard O. Wells, Co-Trustee, and Stephen E. Algire, Co-Trustee, shall provide Plaintiff, Kathy J. Salyers, with an accounting concerning the trust assets. Said accounting shall be provided to plaintiff within the next thirty days."

{¶25} The accounting was not given within the thirty day period, but was attached to appellees' motion for summary judgment filed on January 10, 2011. The "accounting" was a handwritten ledger titled "Record Book." Defendant's Exhibit C. The trial court's characterization of the "Record Book" is more than a generous interpretation of what is required and anticipated by the Ohio Revised Code. An inventory was not included, nor was there a running account of the daily disbursements and receipts. The supplemental trust accounting filed on June 23, 2011 did not alleviate the problems of the "Record Book."

{¶26} This court is aware that non-professional trustees are not necessarily held to the strict accounting standards of professional trustees. However, we find the

"Record Book" and the supplemental trust accounting fall far beneath the standard of care mandated by R.C. Chapter 5808.

{¶27} Upon review, we find the trial court erred in determining the accounting herein to be adequate and in granting summary judgment to appellees.

{¶28} Assignment of Error I is granted, and the matter is remanded for a proper accounting, inventory, and recalculation of the trust.

II

{¶29} Appellant claims the trial court erred in ordering her to pay 75% of the attorney fees incurred by appellees. We agree.

{¶30} In its journal entry filed August 2, 2011, the trial court ordered the following as to attorney fees:

{¶31} "The Court further finds that Ms. Salyers has already received distributions of a total value of $103,643.30. The Co-Trustees set aside assets in Edward Jones account 437-07207-1-8 to fund Ms. Salyers trust. The current value of these assets is $208,924. To bring her share of the assets from Mrs. Fearn's Trust to the level already distributed to her brother and sister, Ms. Salyers is entitled to another $47,433. However, from this $47,433, Ms. Salyers is obligated to pay her own attorneys $21,560. The Court is also Ordering Ms. Salyers to pay the attorneys for the Fearn Trust $15,870.49. This represents 75% of the total attorney fee bill for the Trust. The remaining 25% of the Trust attorney fees, in the amount of $5,290.16 are to be paid from the remaining funds that would have been distributed to Stephen Algire and which will now be distributed to his estate. The Court further Orders the remaining court costs of $307 be paid from Ms. Salyers share of the remaining Trust funds.

{¶32} "The litigation filed by Ms. Salyers contested the very validity of the Fearn Trust, and in the alternative, sought to reform or modify the trust and other relief. This

Court has found all of these claims to be without merit as a matter of Summary Judgment. Ms. Salyers litigation forced the Trust to defend itself and expend money on attorneys which the Court believes Ms. Salyers must now pay. However, part of these legal fees for the Trust, were to defend Mr. Alguire's position as Trustee for the Trust. The extent of these legal expenses was expanded because of the degree of animosity between Mr. Algire and Ms. Salyers. Mr. Algire must bear part of the responsibility for this animosity and in the opinion of this Court he has the responsibility to pay this part of the legal expenses of the Trust. Considering all the circumstances of this case the Court believes this is a just allocation of these legal expenses."

{¶33} The trial court justified its decision by finding animosity between the siblings, and there is no doubt that it was present. However, an accounting and/or inventory were not done until appellant initiated the action. It was appellees' statutory duty to provide an accounting. An adequate accounting was not given despite the trial court's order of October 26, 2010.

{¶34} Upon review, we find it was error to make appellant responsible for 75% of appellees' attorney fees. As for appellant's own attorney fees, it was clear that the challenge to the 2006 trust was not warranted.

{¶35} Assignment of Error II is granted.

{¶36} The judgment of the Court of Common Pleas of Knox County, Ohio, Probate Division is hereby reversed.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

_s/ Sheila G. Farmer_____

_s/ W. Scott Gwin_____

__s/ John W. Wise_____

JUDGES

SGF/sg 305

[Cite as *In re Marjorie A. Fearn Trust*, 2012-Ohio-1029.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| THE MARJORIE A. FEARN TRUST | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | CASE NO. 11-CA-16 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Knox County, Ohio, Probate Division is reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.  Costs to appellees.

___s/ Sheila G. Farmer_____

___s/ W. Scott Gwin_____

____s/ John W. Wise_____

JUDGES