[Cite as *Zimmerman v. Dillon*, 2025-Ohio-3157.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAIGE ZIMMERMAN, INDIVIDUALLY AND AS CO-TRUSTEE OF THE DONALD M. ZIMMERMAN TRUST OF MARCH 4, 2009, AND AS NATURAL GUARDIAN OF ANDREW ZIMMERMAN AND LILY ZIMMERMAN, | Case No. 2024CA00207 |
| | <u>Opinion And Judgment Entry</u> |
| Plaintiffs - Appellees | Appeal from the Stark County Court of Common Pleas, Probate Division, Case No. 247086 |
| -vs- | |
| JOHN M. DILLON, ET AL., | Judgment:   Affirmed |
| Defendants – Appellants | Date of Judgment Entry:September 3, 2025 |

**BEFORE:** William B. Hoffman; Andrew J. King; Robert G. Montgomery, Appellate Judges

**APPEARANCES:** JOHN P. THOMAS AND LESLIE E. WARGO, for Plaintiffs-Appellees-Cross-Appellants; JOHN D. CLARK, for Defendants-Appellants-Cross-Appellees.


OPINION


*Montgomery, J.*

{¶1}    Defendant-Appellant, John Dillon ("Appellant") appeals the decision of the Stark County Probate Court finding Appellant liable for breach of trust and awarding damages and other forms of relief to Plaintiff-Appellee, Paige Zimmerman, individually and as co-trustee of the Donald Zimmerman Trust.  For the reasons below, we affirm.

## STATEMENT OF RELEVANT FACTS

{¶2} After a bench trial, the probate court made the following relevant findings of fact. Plaintiff-Appellee, Paige Zimmerman ("Paige"), is the sole surviving child and the daughter of Decedent, Dr. Donald M. Zimmerman (the "Decedent"). Decedent died on March 28, 2022, and was survived by Paige and her two children, Andrew and Lily. Appellant was Decedent's longtime friend for over forty years.

{¶3} On March 4, 2009, Decedent signed the Donald M. Zimmerman Trust (the "Trust"), and several amendments were subsequently executed. On January 31, 2022, the Decedent signed the Fifth Amendment to the Trust, designating Paige and Appellant as co-successor trustees. The Fifth Amendment also instructs that the co-trustees shall distribute Decedent's tangible personal property held as part of the Trust Estate to Paige and specifies that all Trust assets shall be held in a separate trust for each child or grandchild. Thus, the Fifth Amendment to the Trust provides: (1) Paige and Appellant are the co-trustees for Paige; (2) Paige and Appellant are the co-trustees for the Decedent's grandchildren; and (3) specifies how the assets shall be distributed to the grandchildren.

{¶4} Decedent had significant financial assets, including but not limited to an IRA account; a personal and Trust account at Huntington Bank; a life insurance policy with his granddaughter Lily Zimmerman as the named beneficiary; and CSX stock with his grandson Andrew Zimmerman as the named beneficiary. Decedent's Trust also owns the real property located at 4951 Blakemore Trail, NW, Canton, Ohio 44718 (the "Home").

{¶5} On June 8, 2022, the co-trustees opened two new Trust accounts, accounts ending in x9837 and x1401 and both signed account agreements that opened these

Huntington accounts. However, the bank statements were solely in the name of "John Dillon in trust for the Trust," and said statements went to Appellant's personal residential address. Appellant also had sole online access to the Trust accounts. At trial, Appellant acknowledged he was mainly in charge of managing the Trust's checking accounts.

{¶6} Attorney Trevor Lyke, an estate attorney, handled the financial planning and investments for the Trust. Appellant stated that Attorney Lyke continued to handle certain transactions, although he had no specific authority to do so following Decedent's death. Appellant testified that because Decedent had already used Attorney Lyke for these aspects of the Trust, it made sense to Appellant to continue that way. Appellant did not seek Paige's approval for such planning after Decedent's death.

{¶7} At the time of his death, one of Decedent's payable on death accounts had a balance of $12,860.42, and Paige was the designated beneficiary. After Appellant provided Paige with $10,000.00 from that account, he transferred the remaining $2,860.42 into the Trust account ending in x1401. However, regarding the Home owned by the Trust, Appellant made no efforts to transfer title of the Home to Paige despite repeated requests from Paige and as required by the Trust's terms. Appellant responded that these "things take time" and it is "in process." Attorney Lyke also testified that Appellant made no efforts to transfer title of the Home to Paige.

{¶8} Paige intended to move into the Home with her two children. To do so, significant improvements and repairs were necessary. Paige suggested using Decedent's prior contractor, but Appellant disagreed and instead recommended his friend, James Carnes ("Mr. Carnes"). Appellant and Paige ultimately hired Mr. Carnes, and/or his company Atwood Lake Construction ("ALC"), as the contractor to perform the

renovations. Mr. Carnes and Appellant have worked on many construction projects/renovations together in addition to the work performed at the Home, including those on Appellant's own properties. There were at least seven (7) properties that Appellant and Mr. Carnes worked on with each other over the course of ten (10) years.

{¶9} In December 2022, Appellant and Paige met with Mr. Carnes at the Home to discuss the details of the renovations. Paige testified that Appellant and Mr. Carnes agreed on a verbal estimate of $250,000.00, but Paige authorized a lower budget of $200,000.00: $80,000 for upstairs and $120,000 for downstairs. There was never a written contract for the proposed renovations and no written quote or estimate for the work or scope of work anticipated to be performed by Mr. Carnes. Shortly after the December meeting, Mr. Carnes began work at the Home.

{¶10} The evidence revealed that during the renovations, Mr. Carnes provided invoices to Appellant for payment by delivering the invoice to him either in person or via email. Upon receipt, Appellant paid Mr. Carnes. Although Paige was aware that Appellant paid the invoices, at no time did Paige receive any copies of the invoices. The payment system used by Appellant to pay Mr. Carnes was described at trial. In essence, although a few checks were written directly to Mr. Carnes from the Trust account, many checks were made payable from a Trust account directly to Appellant. Appellant would then cash the checks written to himself and give the cash to Mr. Carnes. Mr. Carnes apparently preferred cash payments due to marital issues at the time. Both Appellant and Mr. Carnes testified that such cash payments were in fact made. However, when Appellant paid Mr. Carnes in cash, no receipt of any kind was given to Appellant and Appellant never asked for one. Although the renovations continued between December 2022 through early

August 2023, Paige did not receive any invoice until July 2023, when she retained counsel and officially requested a full accounting.

**{¶11}** Appellant testified that when he paid Mr. Carnes, he did not verify any of the expenses or materials identified on the invoices prior to payment and did not ensure that Mr. Carnes in fact performed the work as reflected on the respective invoices. At trial, Appellant attempted to provide some receipts from Home Depot and Sherwin Williams, but the receipts did not match the invoices billed by Mr. Carnes and ultimately paid by Appellant. Beginning in June 2023, Paige began to question the costs of the renovations because it seemed to her that a lot of money was being paid but there was still much work to complete. Paige tried to meet with Appellant and Mr. Carnes at the Home during this time but became frustrated with Appellant's lack of cooperation. Eventually, on July 6, 2023, Paige retained counsel to assist in the administration of the Trust. Paige sent an email to Appellant requesting an accounting and instructing him that she must approve any further expenditures. Shortly thereafter, on July 17, 2023, Appellant withdrew another $9,877.00 in cash from a Trust account to pay Mr. Carnes' past due bills. Paige questioned Appellant concerning this withdrawal, via text, and again instructed him not to use Trust funds without her approval.[1]

---

[1] In addition to the renovations at the Home, evidence was presented that Appellant made other unauthorized distributions of Trust assets. For example, on March 24, 2003, Appellant wrote a check for $2,000.00 to Mr. Carnes for "lawn furniture." However, Paige never received any lawn furniture. Appellant testified that writing "lawn furniture" in the memo line of the check was a reminder to himself to purchase lawn furniture at a future time. Another example was an invoice paid on May 22, 2023, to Mr. Lyke, an attorney, paid from trust assets. Paige never received a copy of the invoice and there was no evidence of any fee agreement.

{¶12} Aside from the cash transactions for renovations, Appellant made additional deposits into his personal account that were not in accordance with the Trust. For example, Appellant paid himself a trustee fee, in the amount of $3,500.00, without Paige's approval. Appellant also agreed to pay Mr. Carnes in the form of Tesla stock; however, the testimony demonstrated the stock remained in Appellant's name, not Mr. Carnes. On March 17, 2023, Trust funds were used to reimburse Appellant and his wife for payments previously made to Mr. Carnes out of their personal funds. The probate court determined that these various additional deposits of Trust assets and withdrawals were similarly not supported by documentary evidence.

{¶13} Eventually, on July 24, 2023, Paige withdrew all the money held by the Trust. On August 29, 2023, Paige filed a Complaint in the Stark County Probate Court seeking, inter alia, Appellant's removal as Co-Trustee, an accounting of the Trust, and money damages. The matter proceeded to a bench trial. After hearing the testimony and reviewing the evidence submitted, the court issued its Decision and Judgment Entry regarding liability on July 1, 2024. The probate court found Appellant breached the trust by: (1) failing to provide a proper accounting of all the receipts and disbursements of the Trust, especially in light of the questionable cash transactions; (2) failing to ensure that the Trust assets were not subjected to erroneous or inaccurate billing; and (3) paying Mr. Carnes $9,877.00 from the Trust account without Paige's consent after she instructed Appellant in writing that she must approve all expenditures. It further found that Appellant committed conversion by paying the $9,877.00 to Mr. Carnes from Trust funds without Paige's consent and unilaterally paying himself a $3,500.00 trustee fee.

**{¶14}** As a result of these findings regarding liability, the probate court: (1) removed Appellant as co-trustee of the Trust; (2) awarded monetary judgment against Appellant, in his individual capacity, in the amount of $13,377.00 plus interest at the statutory rate from the date of the judgment and costs; (3) ordered Appellant to produce a full, complete and accurate accounting of all assets belonging to the Trust by August 9, 2024; and (4) ordered a separate damages' hearing to determine the award of damages for conversion, court costs, and attorney fees to be imposed pursuant to R.C. 5810.04, as well as a determination as to the cost to be awarded to fix the bathrooms at Decedent's Home.

**{¶15}** At the damages hearing, Paige presented additional expert testimony regarding necessary bathroom repairs/renovations. The probate court issued a separate written decision and, relevant to this appeal, determined that a reasonable award for costs to repair the bathrooms was $40,000.00, representing the estimate for repairs to "Bathroom C" and "Half Bathroom." The probate court also awarded Paige reasonable attorney fees in the amount of $75,701.55 and costs in the amount of $5,334.10. These damages as well as damages for breach of trust in the amount of $13,377.00, were awarded against Appellant, in his individual capacity. The trial court awarded zero dollars in damages for conversion.

## ASSIGNMENTS OF ERROR

### ASSIGNMENT OF ERROR NO. 1

**{¶16}** "I. THE TRIAL COURT ERRED IN FINDING THAT CO-TRUSTEE MR. DILLON WAS IN BREACH OF TRUST."

## ASSIGNMENT OF ERROR NO. 2

**{¶17}** "II.  THE TRIAL COURT ERRED IN FINDING THAT CO-TRUSTEE MR. DILLON DID NOT PROVIDE A PROPER ACCOUNTING OF ALL RECEIPTS AND DISBURSEMENTS OF THE TRUST."

## ASSIGNMENT OF ERROR NO. 3 (DAMAGES JE)

**{¶18}** "III.  THE TRIAL COURT ERRED IN FINDING THAT MR. DILLON SHALL PAY FORTY THOUSAND DOLLARS ($40,000.00) TO CO-TRUSTEE/BENEFICIARY ZIMMERMAN FOR COSTS TO REPAIR THE BATHROOMS."

## ASSIGNMENT OF ERROR NO. 4 (DAMAGES JE)

**{¶19}** "IV.  THE TRIAL COURT ERRED IN FINDING THAT CO-TRUSTEE MR. DILLON SHALL PAY SEVENTY-FIVE THOUSAND SEVEN HUNDRED AND ONE DOLLARS AND FIFTY-FIVE CENTS ($75,701.55) OF ATTORNEY FEES AND FIVE THOUSAND THREE HUNDRED THIRTY-FOUR DOLLARS AND TEN CENTS ($5,334.10) IN COSTS TO CO-TRUSTEE/BENEFICIARY ZIMMERMAN."

## LAW AND ANALYSIS

### *Breach of Trust Generally*

**{¶20}**  In the first assignment of error, Appellant claims the probate court erred in finding a breach of trust.  We disagree.  Appellate courts review a trial court's finding regarding a breach of trust under the Ohio Trust Code using the manifest-weight-of-the-evidence standard. *McHenry v. McHenry,* 2017-Ohio-1534, ¶ 38 (5th Dist.); *Weygandt v. Ward*, 2013-Ohio-1937, ¶ 16 (9th Dist.), quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98 (1989); *Rudy v. Bodenmiller*, 1990 WL 205109, *11 (2d Dist. 1990) (indicating that whether defendant breached fiduciary duties is a question of fact).  Thus, a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *McHenry*, ¶ 38, citing *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279 (1978). "The underlying rationale of giving deference to the findings of

the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*, citing *Seasons Coal Co. v. City of Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶21} Under Ohio law, a trustee of a trust has a fiduciary duty to act in the best interests of the beneficiaries and provide them with information and accountings as required by law, as well as that required by the trust document. "Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801 to 5811 of the Revised Code." *See* R.C. 5808.01. A breach of trust occurs when a trustee violates any duty owed to a beneficiary. R.C. 5810.01(A) states the general rule that, "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." See, *Bryan v. Chytil,* 2021-Ohio-4082, ¶ 92 (4th Dist.). Thus, a party claiming a breach of trust under R.C. 5810.01(A) must establish that, (1) the trustee owes a duty to a beneficiary, and (2) the trustee breached that duty. *Chytil*, ¶ 88.

{¶22} The party claiming a breach of trust need not demonstrate that the trustee acted willfully or fraudulently. Rather, a trustee's violation of a duty "that equity lays upon him, whether willful and fraudulent, or done through negligence, or arising from mere oversight or forgetfulness, constitutes a breach of trust." *Id.*, ¶ 92, citing *Keybank Natl. Assn. v. Thalman*, 2016-Ohio-2832, ¶ 15 (8th Dist.). A breach of trust includes every omission or commission that violates the duties specified. *Chytil*, ¶ 92, quoting *Shuster v. N. Am. Mtge. Loan Co.,* 139 Ohio St. 315, 343 (1942) (other citation omitted). Under R.C.

5810.02, a trustee who commits a breach of trust is liable to the beneficiaries for damages. See, *Wills v. Kolis,* 2010-Ohio-435, ¶ 19 (8th Dist.).

**{¶23}** R.C. Chapter 5808, *et seq.*, lists the specific duties that a trustee owes to the trust's beneficiaries. *Dueck v. Clifton Club Co.*, 2017-Ohio-7161, ¶ 75 (8th Dist.). These duties include: (1) the duty to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the applicable Ohio statutes; (2) the duty of loyalty and to avoid conflicts of interest; (3) the duty to act impartially when a trust involves two or more beneficiaries; (4) the duty to "administer the trust as a prudent person would" and to "exercise reasonable care, skill, and caution;" (5) the "duty not to incur unreasonable costs;" (6) the duty to "take reasonable steps to take control of and protect the trust property;" (7) the "duty to keep adequate records" and to "keep trust property separate from the trustee's own property;" and (8) the "duty to keep the beneficiaries reasonably informed of the administration of the trust, and of the material facts necessary for them to protect their interests." *See generally,* R.C. 5808.01 through R.C. 5808.14. Thus, Ohio law requires trustees to maintain accurate and adequate records of trust transactions and to provide detailed reports at certain times and upon request.[2]

**{¶24}** Thus, "[i]mplicit within the duties and powers of a trustee is the prohibition against self-dealing [R.C. 5808.14(B)(2)]." *In re Marjorie A. Fearn Tr.,* 2012-Ohio-1029,

---

[2] R.C. 5808.13 explicitly defines the duties of a trustee to the beneficiaries. Included in the duties is the requirement that an accounting be given annually:

"(C) A trustee of a trust that has a fiscal year ending on or after January 1, 2007, shall send to the current beneficiaries, and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values. * * *"

¶ 21 (5th Dist.). A trustee "shall exercise a discretionary power reasonably, *in good faith*, and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." *Id.*, citing R.C. 5808.14(A) (emphasis added). Moreover, to the extent a trustee's duty requires the trustee to act reasonably or as a prudent person, we note that reasonableness, and "whether a party has exercised reasonable diligence," ordinarily depends "on the facts and circumstances of each case." *Gerrity v. Chervenak*, 2020-Ohio-6705, ¶ 31, citing *Sharp v. Miller*, 2018-Ohio-4740, ¶ 17 (7th Dist.). When a trustee breaches the trust, R.C. 5810.02, captioned "Liability to beneficiaries for breach," provides in pertinent part:

> (A)    A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of the following:
>
> > (1)    the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred;
> >
> > (2)    the profit the trustee made by reason of the breach.

**{¶25}** Here, the probate court determined a breach of trust occurred because Appellant failed to keep proper records, failed to review invoices for work performed, used a payment system that was not standard practice nor was it approved or even explained to co-trustee Paige, and made certain payments from Trust assets belonging to Paige, a co-trustee and beneficiary, without Paige's consent. We find competent, credible evidence exists to support the probate court's findings.

### Duty to Keep Adequate Records – R.C. 5808.10

**{¶26}** R.C. 5808.10(A) mandates that a trustee "keep adequate records of the administration of the trust."  It is axiomatic that to fully protect trust property, a trustee must keep complete and accurate records.  Said records should be so full and complete that the records put to rest any questions that could potentially arise.  As aptly stated by an authority on the Law of Trusts:

> The essence of the trust relationship is the fiduciary duty of the trustee to manage properly the trust property for the benefit of the beneficiaries in accordance with the terms of the trust. Fundamental to that duty, and to the trustee's duty to account for its management of the trust property, is the trustee's duty to keep accurate and complete records of its administration of the trust.

**{¶27}** *See,* "Duty to keep records," Bogert's The Law of Trusts and Trustees § 961; *see, also,* 91 Ohio Jur. 3d Trusts § 451 ("A trustee has the responsibility, as fiduciary, of keeping clear and accurate account records for a trust. Under the Ohio Trust Code, a trustee shall keep adequate records of the administration of the trust").  Further, Section 7.02 of the Trust at issue provides:

> It shall be the Trustee's duty to keep complete and accurate records showing such receipts, disbursements, or other transactions involving the Trust Property and all evidence thereof, shall be available to me, adult beneficiaries, or their agents, for inspection and for the purposes of making copies thereof.

**{¶28}** Here, the testimony demonstrates that Appellant failed to keep adequate and accurate records concerning certain Trust account transactions. Appellant and Paige verbally contracted with Mr. Carnes to do the home renovations that are at issue in this appeal. Although no written proposal or other contract was reduced to writing, the parties agreed on an estimate and Mr. Carnes began renovations in December of 2022. Regarding invoice payment, Appellant testified he typically wrote checks to himself from the Trust account, deposited the checks into his personal account, withdrew cash from his personal account, and paid the cash to Mr. Carnes. Mr. Carnes testified to the same payment system. It is undisputed that Appellant kept *zero* receipts for these cash transactions, despite his obligation to do so pursuant to Section 7.02 of the Trust, as well as the Ohio Revised Code, and common law. This failure alone is sufficient to establish a breach of trust. Appellant unilaterally decided that this was a proper way of doing business with Trust assets.

**{¶29}** Further, R.C. 5808.04 imposes a duty on a trustee to administer the trust as would a prudent person. The probate court found that, "writing checks to himself and obtaining cash from the Trust accounts to pay invoices is not a standard practice." *Judgment Entry*, p. 11. The total amount of checks made payable directly to Appellant, and the subsequent cash withdrawals and cash payments to pay Mr. Carnes totaled well over $100,000.00 from Trust funds, but Appellant cannot establish the exact amount of cash payments made because there are no records. Appellant did not exercise reasonable diligence in unilaterally determining a payment system, that is unusual at best, and in failing to keep any records of the cash transactions. Although Appellant claims Paige was aware of the cash payments, Appellant had a duty to keep complete and

accurate records showing such receipts, disbursements, or other transactions involving the Trust.

### *Duty to protect the trust property – R.C. 5808.09*

**{¶30}** In addition to his failure to keep proper records, competent, credible evidence exists to support the probate court's finding that Appellant failed to ensure that Trust property was adequately protected. R.C. 5808.09 provides "[a] trustee shall take reasonable steps to take control of and protect the trust property." Appellant admitted that when he received an invoice from Mr. Carnes, he simply made payment without question. Appellant did not verify any of the expenses or materials identified on Mr. Carnes' invoices nor did he go to the Home to ensure Mr. Carnes in fact performed the work as reflected on the invoices. Mr. Carnes simply provided invoices, and Appellant paid them. The evidence demonstrates that Mr. Carnes was paid approximately $120,000.00 (prior to Paige telling him to cease all work), and there was still a lot of work remaining. As set forth above, Appellant need not act willfully or intentionally to demonstrate a breach of trust. A trustee's mere negligence or even simple oversight is sufficient. The failure to monitor the accuracy of Mr. Carnes' invoices demonstrates that Appellant failed to take reasonable steps to protect the Trust's property, amounting to a breach of trust.

**{¶31}** In addition to the above breaches of trust, additional examples exist. First, Appellant committed a breach of trust by unilaterally paying himself a $3,500.00 trustee fee from Trust assets belonging to Paige, without Paige's consent. Second, it is undisputed around June 2023, Paige began to question the status of the renovations, and the payments made to pay Mr. Carnes considering the amount of work still yet to be done.

Paige retained counsel and on July 6, 2023, she sent an email to Appellant instructing him to obtain her approval for all further disbursements from the Trust. Paige's counsel followed up with a letter to Appellant dated July 11, 2023, specifically requesting an accounting as well as Paige's approval on all further Trust expenditures. Thereafter, on July 17, 2023, Appellant withdrew $9,877.00 in cash from the Trust account and paid three of Mr. Carnes' past due bills without Paige's consent. In these instances, Appellant did not "exercise a discretionary power reasonably, in good faith, and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." R.C. 5808.14(A).

{¶32} Overall, Appellant's unilateral decisions to use Trust funds as he deemed fit and without Paige's knowledge or consent, as well as Appellant's irresponsible failure to keep adequate records concerning Trust assets and transactions, provides the necessary competent, credible evidence to support the probate court's finding that a breach of trust occurred. Without question, Appellant failed to exercise reasonable care, skill and caution as required by the Ohio Revised Code. Appellant's first assignment of error is overruled.

### Accounting – R.C. 5808.13

{¶33} Appellant's second assignment of error claims the probate court erred in finding Appellant failed to properly account for Trust assets. This assignment of error is related to and overlaps with the first assignment of error. The same standard of review applies to the probate court's determination that Appellant failed to provide a full and complete accounting. Thus, a judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *McHenry*, ¶ 38.

**{¶34}** A basic tenet of trust law is that a beneficiary is entitled to an accurate and complete accounting of all assets in a trust. *Matter of Tr. Created by Item IX of the Will of Mellott*, 2020-Ohio-3738, ¶ 23 (7th Dist.). R.C. 5808.13(A) addresses the duty of a trustee to inform and report: "A trustee shall keep the current beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust."

**{¶35}** It is undisputed that Paige did not have access to how the Trust account funds were being spent, specifically funds being paid to Mr. Carnes as Appellant was the only one with access. Appellant also did not give any invoice to Paige until July 2023. Although Appellant provided Paige with several spreadsheets after she requested an accounting, there was no supporting documentation. To this point, Appellant described a Trust accounting as a balance sheet of the Trust's assets and liabilities – he apparently did not think it was important to keep records or receipts of payments and/or disbursements. Appellant simply has not demonstrated that the cash withdrawals from the Trust account match the cash payments made to Mr. Carnes.

**{¶36}** Because Appellant did not keep accurate or complete records of Trust account transactions, as set forth above, it is nearly impossible for him to now provide a full and accurate accounting. See, *McHenry*, ¶ 51 ("While recognizing that non-professional trustees are not necessarily held to the same standards as professional trustees, this Court has previously found that a handwritten ledger that included neither an inventory nor a running account of disbursements and receipts fell beneath the

standard of care required by Chapter 5808 of the Ohio Revised Code."), citing *In re: Marjorie A. Fearn Trust,* 2012-Ohio-1029 (5th Dist.) (holding that the accounting provided by trustees to beneficiary of revocable trust did not meet standard of care required under trust statutes; accounting was a handwritten ledger titled "record book," that failed to include any inventory of trust assets or any running account of daily disbursements and receipts).

*{¶37}* As explained by the probate court, Appellant provided three different spreadsheets showing the amounts of the invoices and payment, but "they were confusing and inaccurate." *Judgment Entry*, p. 11. The Court stated, "He has provided three different spreadsheets showing the invoices relative to the Home remodel and the payments he made on these invoices. These spreadsheets are confusing and contain inaccuracies. Appellant's Trial Exhibit HH was the third attempt at accounting for the expenses of the remodeling. This spreadsheet also appears to contain inaccuracies." *Id*. Appellant provides no explanations for the inaccuracies. Thus, the probate court properly determined Appellant failed to properly account. Appellant's second assignment of error is overruled.

### Damages to repair and renovate two bathrooms

{¶38} In the third assignment of error, Appellant argues the probate court improperly awarded $40,000.00 as a reasonable estimate to repair and renovate "Bathroom C" and the "Half Bathroom." Appellant claims the court was confused and "lost its way" with regards to the bathroom repairs and blindly accepted Paige's expert witness Michael Leonardi's estimate for costs to completely remodel two bathrooms. We disagree.

**{¶39}** Judgments supported by competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *McHenry*, ¶ 38, citing *CE. Morris Co.,* supra. Some appellate courts have applied an abuse of discretion standard when reviewing a trial court's award of damages. See *Campolieti v. Cleveland Dept. of Pub. Safety,* 2013-Ohio-5123, ¶ 36 (8th Dist.), citing *Roberts v. US. Fid. & Guar. Co.,* 75 Ohio St.3d 630, 634 (1996); *Howard v. Bond*, 2012-Ohio-254, ¶ 9 (4th Dist.) (An appellate court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion; but see the *concurring opinion* using manifest weight standard - stating that determining the appropriateness of a damage award is largely a question of whether the facts in evidence support the trial court's judgment); Here, we find that the damages awarded were proper under either standard. Indeed, if competent, credible evidence supports the judgment, there is no abuse of discretion.

**{¶40}** Here, after the bench trial regarding liability, the probate court ordered a separate hearing "to determine the award of damages for conversion, court costs, expenses, and attorney fees to be imposed pursuant to R.C. 5810.04, as well as a determination as to the cost to be awarded to fix the bathrooms at the Home." *Judgment Entry,* p. 22. The court stated it "shall receive further evidence in support of the amount to be awarded for the bathroom repairs upon further hearing." *Judgment Entry*, p. 16.

**{¶41}** At the damages hearing, Paige called Mr. Michael Leonardi as an expert witness. Mr. Leonardi has been a contractor and remodeled bathrooms for approximately nineteen years. Mr. Leonardi qualified as an expert witness, testified to the facts within his personal knowledge, and provided his expert opinion as to the costs to correct all the bathrooms in the Home, an estimate of $130,000.00. The estimate to renovate only two

bathrooms - Bathroom C and the Half Bathroom - was $40,000.00. Despite the expert testimony presented at trial suggesting that the cost would be between $10,000.00 to $20,000.00 to fix two full bathrooms and one-half bath, Mr. Leonardi testified that the plumbing in the downstairs bathrooms had leaks, and other necessary repairs were required to make the bathrooms functional and to comply with Paige's standards. Appellant did not present a rebuttal expert.

{¶42} Although Appellant argues the probate court "blindly" accepted a "new" estimate to remodel, the converse is true. The probate court conducted a thorough damages' hearing after the liability phase, and issued a separate, detailed decision regarding same. The court expressly recognized that Paige presented evidence for repairs on all bathrooms in the Home and included repairs "not presented or requested at trial," and that said request was inconsistent with the case presented at trial. In other words, the probate court rejected the higher estimate of $130,000.00 to renovate *all* the bathrooms in the home and instead awarded damages to repair only *two* bathrooms. That Appellant does not consider Mr. Leonardi credible or knowledgeable is pure speculation. Appellant had the opportunity to present his own rebuttal expert witness to refute the cost of repairs but did not. As such, the damages awarded to fix the bathrooms is not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

### Attorney Fees and Costs

{¶43} In Appellant's fourth assignment of error, he claims the probate court should not have ordered Appellant to pay attorney fees and costs to Paige. The trial court approved attorney's fees for legal services in the amount of $75,701.55 and costs in the amount of $5,334.10, to be paid from Appellant himself, in his individual capacity.

**{¶44}** When considering an award of attorney fees, Ohio follows the "American Rule," under which a prevailing party in a civil action generally is not entitled to recover attorney fees. *Wilborn v. Bank One Corp.,* 2009-Ohio-306, ¶ 7. However, attorney fees may be awarded when a statute or an enforceable contract specifically provides for an award of attorney fees, or when the prevailing party demonstrates the losing party acted in bad faith. *Id.; McHenry,* supra.

**{¶45}** R.C. 5810.04 states, in a judicial proceeding involving the administration of a trust, * * * the court, as justice and equity may require, may award costs, expenses, and reasonable attorney fees to any party, to be paid by another party, from the trust that is the subject of the controversy, or from a party's interest in the trust that is the subject of the controversy." *See, also, Dueck v. Clifton Club Company,* 2017-Ohio-7161, ¶ 24 (8th Dist.).[3] An award of attorney fees under R.C. 5810.04 is reviewed for an abuse of discretion. *Rex. v. Rex,* 2016-Ohio-5788, ¶ 51 (5th Dist.); *McHenry*, ¶ 56. An abuse of discretion means that the trial court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore* at 219.

**{¶46}** Attorney fees are governed by Rule 1.5 of the Ohio Rules of Professional Conduct. Sup. R. 71(A). Rule 1.5 lists the following factors to be considered in determining the reasonableness of a fee:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

[3] This section codifies the court's historic authority to award costs and fees, including reasonable attorney's fees, in judicial proceedings grounded in equity. The court may award a party its own fees and costs from the trust. The court may also charge a party's costs and fees against another party to the litigation. *See,* Official Comment to R.C. 5810.04.

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)    whether the fee is fixed or contingent.

{¶47} Reasonable attorney fees shall be based upon the actual services performed by the attorneys and upon the reasonable value of those services. *In re Estate of Verbeck,* 173 Ohio St. 557, 558 (1962). The burden is upon the attorney to introduce sufficient evidence of the services performed. *Id.* at 559. In determining the reasonableness of attorney fees, the probate court must take evidence and judge the value of the work performed by the attorney. *In re Estate of Campbell,* 2003-Ohio-7040 (7th Dist.).

{¶48} Like Appellant's current argument, the appellant in *McHenry* argued that the probate court's award of attorney fees and costs pursuant to R.C. 5810.04, in the amount of $49,444.28, was "excessive" given that the judgment of monetary damages awarded appellee was $13,364.32. This Court disagreed. *McHenry*, ¶¶ 53, 61. Although the Plaintiff did not prevail on several claims surrounding the trust administration, this Court stated: "[t]he trial court did not abuse its discretion in noting that appellee did not prevail on all claims yet not reducing the attorney fee award based on her failure to prevail on all

claims." *Id.* at ¶ 57. The Court noted that other forms of relief, besides compensatory damages, were awarded including a transfer of "die cast models" plaintiff was entitled to under the trust's terms, the removal of appellant as trustee, and ordering the defendant trustee to provide an accounting and file an amended estate tax return. *Id.* at ¶ 58.

**{¶49}** Further, the Ohio Supreme Court has specifically noted that when attorney fees are awarded under the Consumer Sales Practices Act, the attorney fee award need not be proportional to the amount of damages. *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 144, 569 N.E.2d 464 (1991). The Ohio Supreme Court noted in *Bittner:*

> We agree with the observation of the United States Supreme Court when it said: 'A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious * * * claims but relatively small potential damages to obtain redress from the courts.' (Citation omitted.) *Id.*
>
> Likewise, a rule of proportionality in trust cases would make it difficult for beneficiaries with meritorious claims against the trustee, but with relatively small potential damage claims, to seek redress in court.
>
> *McHenry*, ¶¶ 58-61.

**{¶50}** Similarly, here, Appellant contends that the probate court's award of fees and costs was excessive compared to the compensatory damages awarded to Paige - $53,377.00 ($13,377.00 plus $40,000.00 for the repair/renovation of two bathrooms). We find no abuse of discretion in the probate court's award of attorney fees and costs.

**{¶51}** In accordance with Ohio case law, that the compensatory damages were less than the award of attorney fees is simply not dispositive. Paige prevailed on her claims for removal of Appellant as co-trustee, breach of trust, conversion, and Appellant

was ordered to provide a full and accurate accounting.  In support of Paige's request for fees, two attorneys testified, and Attorney Thomas submitted an itemization for legal services and invoices for costs.  In response, Appellant presented the testimony of Attorney Thompson, who opined that Attorney Thomas' hourly rate was reasonable, but some of the filings were not reasonable.  Attorney Thompson suggested that attorney fees should not exceed $70,000.00.

**{¶52}** The probate court awarded approximately $10,000.00 less than the amount Paige requested.  It is clear from the record that the court thoughtfully analyzed the issue and rejected certain items that were unreasonable or excessive, including time for inter-office conferencing, excessive time researching issues that are not novel, travel time for filing and court attendance, receiving information from the Court, and conferencing with Court staff.  It also reduced the proposed paralegal fee from $150.00 per hour to $125.00 per hour.  The fact remains that Paige felt compelled to bring the instant action due to Appellant's lack of transparency.

**{¶53}** Because the probate court carefully reviewed the applicable law and evidence presented regarding attorney fees, we find no abuse of discretion.  Appellant's fourth assignment of error is overruled.

## **CROSS-APPEAL**

**{¶54}** On January 9, 2025, beyond the time limit for an appeal, Paige filed a cross-appeal asserting two assignments of error.  On April 15, 2025, this Court ordered that the notice of the cross-appeal was deemed timely filed due to a clerical error.  However, because the order was issued prior to final judgment, it is considered interlocutory.  It is well established that the Court possesses the inherent power to reconsider its

interlocutory orders and then modify or rescind those orders prior to the entry of a final judgment. *Cassim v. Cassim*, 98 Ohio App.3d 576, 578 (1994); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991), citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943); *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922).

{¶55} Here, the panel members that heard oral argument in this matter conclude the notice of cross appeal filed on January 9, 2025, was untimely filed, despite the interlocutory order issued above. On November 27, 2024, the Judgment Entry being appealed was filed. Appellant's Notice of Appeal was timely filed on December 26, 2024. The Cross-Appeal was required to be filed by December 27, 2024 - 30 days from the final judgment entry – at the very latest, on January 6, 2025, (which is within 10 days of the filing of the first notice of appeal.) Accordingly, we decline to address the two assignments of error asserted by Paige in support of the cross-appeal.

## CONCLUSION

**{¶56}** Appellant's first, second, third, and fourth assignments of error are overruled in their entirety. We decline to address the cross-appeal as it was untimely filed.

**{¶57}** Costs to Appellant.

By: Montgomery, J.

Hoffman, P.J. and

King, J. concur.